IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

DAVID L. HOWELL,              §
TDCJ #733929,                 §
                              §
          Plaintiff,          §
                              §
v.                            §          CIVIL ACTION NO. G-06-0112
                              §
NATHANIEL QUARTERMAN, *et al.*,  §
                              §
          Defendants.         §

## MEMORANDUM AND ORDER

State inmate David L. Howell (TDCJ #733929) has filed this lawsuit under 42 U.S.C.

§ 1983, alleging violations of his civil rights.  He proceeds *pro se* and he has been granted

leave to proceed *in forma pauperis*.  At the Court's request, Howell has provided an amended

version of his complaint.  (Doc. # 16).  The defendants have filed separate motions for

summary judgment.  (Docs. # 50, # 51).  Howell has filed a response.  (Doc. # 57). After

reviewing all of the pleadings, and the applicable law, the Court grants summary judgment

in favor of the defendants and dismisses this case for reasons that follow.[1]

## I.    BACKGROUND

Howell is currently in custody of the Texas Department of Criminal Justice -

Correctional Institutions Division (collectively, "TDCJ").  Howell's complaint primarily

concerns the level of care that he received at the  at the Ramsey I Unit in Rosharon, Texas,

---

[1]    On October 25, 2007, this case was reassigned to United States District Judge Melinda
       Harmon pursuant to General Order 2007-10.  The case is being handled by the undersigned
       by agreement of the judges.

where Howell was formerly assigned.[2]  Howell sues several TDCJ employees assigned to the Ramsey I Unit facility, including: Director Nathaniel Quarterman, Senior Warden Curtis McKnight, Assistant Warden Kelvin Scott, Assistant Warden D. Turrubiarte, Disciplinary Captain M. Kitchens, Counsel Substitute Patricia Weaver, Lieutenant Delores Tarver, Lieutenant Dan Lewis, Lieutenant Stacy Mickens, Property Officer Stacy Hecht, Correctional Officer Valeri Powell, Dr. Natascha Dumas, Psychological Counselor Billy Stone, and Nurse Manager Patricia Garrison.

Howell explains that he had surgery in 1986 and 1997, to remove "numerous hemorrhoids."[3]  Howell claims that he was examined by a specialist at the John Sealy Hospital in 2001, where he was warned that additional surgery could render him incontinent. As an alternative to surgery, Howell states that the examining physician prescribed a regimen of self-care to control and treat his hemorrhoids.  According to Howell, the surgeon who

---

[2]     Since filing this suit, Howell has been transferred to the Wayne Scott Unit in Angleton, Texas.  (Doc. # 58).

[3]     Hemorrhoids are "[a] varicose condition of the external hemorrhoidal veins," which supply blood to the rectum, "causing painful swelling at the anus."  STEDMAN'S MEDICAL DICTIONARY 806 (27th ed. 2000).  This condition, which can be external or internal,  can cause "bleeding and painful swelling in the anal canal."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 853 (31st ed. 2007).

examined him in 2001 "ordered" him to use a sitz bath,[4] among other things, to alleviate his condition.

Howell complains that, until 2003, he had access to a sitz bath in his cell. Thereafter, Howell was instructed to take sitz baths in the prison medical department or, when the infirmary was closed, to take additional showers as needed. Because he no longer has access to an in-cell sitz bath, however, Howell complains his clothing frequently become soiled with blood, which he finds humiliating. Because he is susceptible to infections, Howell claims that he must wash himself immediately after defecation, which reportedly causes him to bleed so much that he must clean blood from the toilet and his person. Howell claims that "security staff" do not always afford him with prompt access to the infirmary or to a shower. As a result, Howell alleges that his condition causes him to suffer physical and psychological pain, bleeding, and humiliation. Howell claims, therefore, that he needs to have a sitz bath in his cell.

Because he has been denied a sitz bath in his cell, Howell complains that the defendants have denied him adequate medical care for hemorrhoids, or interfered with prescribed treatment, and that several of the defendants were deliberately indifferent to "suicidal ideations" that he expressed on June 1, 2005. As a result of the grievances that he has filed about his care, Howell also claims that he has experienced retaliation. Howell seeks

---

[4]     The defendants provide an affidavit from Registered Nurse Stephen Rogers, who explains that a "sitz bath" is a "tub with a hose that fills with warm water and is used to soothe and cleanse the rectal area." (Doc. # 50, Appendix at 64). Rogers adds that "[t]he equipment for a sitz bath includes a reservoir for water, a long plastic tube, and a basin similar to a bed pan." *Id.*

compensatory and punitive damages from all of the defendants.  The defendants have filed two motions for summary judgment, arguing that Howell is not entitled to relief.  The parties' contentions are addressed below under the governing standard of review.

## II.   <u>STANDARD OF REVIEW</u>

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the following circumstances.  Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).  A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief").  The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law.  Rule 56 of the Federal Rules of Civil Procedure mandates the

4

entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal

citation omitted).  "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"  *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"  *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008).   Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted).  In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence.  *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003).  A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary.  *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *See id.* (internal citations and quotations omitted).  Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III.   <u>DISCUSSION</u>

Invoking the Eleventh Amendment, the defendants assert that they are immune from Howell's claims for monetary damages in their official capacity.  The defendants argue further that Howell cannot demonstrate a constitutional violation and that they are entitled to qualified immunity from suit in their personal or individual capacity.  The defendants' arguments are addressed in turn.

7

## A.    Immunity from Official Capacity Claims

All of the defendants are employed in one capacity or another by TDCJ or the University of Texas Medical Branch ("UTMB"), which are state agencies.  As employees of the State of Texas, the defendants argue that the Eleventh Amendment to the United States Constitution bars any claim for monetary relief against them in their official capacity.  The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  Thus, federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Vogt v. Board of Comm'rs, Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002).

Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency.  *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).  As instrumentalities of the state, UTMB and TDCJ are immune from a suit for money damages under the Eleventh Amendment.  *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  It is also settled that the Eleventh Amendment bars a recovery of money damages under § 1983 from state employees in their official capacity.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

8

In this case, Howell sues the defendants for actions taken during the course of their employment with the State of Texas. To the extent that Howell seeks monetary damages in this case, the Eleventh Amendment bars his claims against the defendants as state employees.[5] It follows that the defendants are entitled to immunity under the Eleventh Amendment from Howell's claims for money damages against them in their official capacity. Accordingly, the defendants are entitled to summary judgment on this issue.

### B.     Qualified Immunity from Individual Capacity Claims

The defendants argue that Howell has failed to establish a constitutional violation and that, even assuming that such a violation occurred, they are entitled to qualified immunity from his claims against them. Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). "The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions." *Cozzo v. Tangipahoa Parish Council – President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (quoting *Thompson v. Upshur Cty.*, 245 F.3d 447, 456 (5th Cir.

---

[5]     A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect. *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1980)). Howell appears to seek injunctive relief in the form of special housing. Because he is no longer in custody at the Ramsey I Unit where the defendants are assigned, his claim for injunctive relief has become moot. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002); *see also Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) (holding that an inmate's transfer from county jail to state prison rendered moot his claims for injunctive relief). Alternatively, Howell is not entitled to relief because, for reasons discussed further below, he fails to demonstrate a constitutional violation in this case.

2001)).  "The Supreme Court has characterized the doctrine as protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

In assessing qualified immunity, the Court must conduct a bifurcated analysis.  *See, e.g., Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004).  The threshold question has two parts.  The initial inquiry asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the official's conduct violated a constitutional right.  *Scott v. Harris*, — U.S. —, —, 127 S. Ct. 1769, 1774 (2007) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established . . . in light of the specific context of the case.'"  *Id.* (quoting *Saucier*, 533 U.S. at 201).  If the defendants' actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendants' "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action."  *Collins,* 382 F.3d at 537 (citations omitted).

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense.  *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)).  An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law.  *Id*.  The plaintiff bears the burden of negating the defense and cannot rest on conclusory

allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Id*.

At the summary judgment stage of this case, a determination whether a constitutional right was violated for purposes of the first prong of the qualified immunity analysis overlaps substantially with the defendants' contention that Howell's allegations lack merit. Accordingly, the Court first addresses whether Howell has raised a genuine issue of material fact about whether the defendants committed a constitutional violation under the Eighth Amendment standard that governs the level of medical and psychological care provided in the prison context. The Court will also address Howell's allegation that he was retaliated against for using the prison grievance process in violation of his First Amendment rights.

### 1.    Eighth Amendment – Adequate Medical Care

Howell complains that the following defendants humiliated him by denying adequate medical care, or interfering with prescribed care, by refusing him access to in-cell sitz baths or timely showers as needed: Senior Warden Curtis McKnight, Dr. Natascha Dumas, Lieutenant Dan Lewis, Lieutenant Delores Tarver, Lieutenant Stacy Mickens, Officer Valeri Powell, Nurse Patricia Garrison, and Assistant Warden D. Turrubiarte.

To prevail under 42 U.S.C. § 1983, Howell must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical

11

care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed.  *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).  The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet.  *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted).  A showing of deliberate indifference requires the prisoner to submit evidence that

prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Id.* (citations omitted).

In this instance, Howell alleges that he suffers from hemorrhoids that cause rectal bleeding, which frequently soils his clothing.  Howell's condition reportedly causes both physical and psychological pain and embarrassment.  Howell alleges that the defendants have been deliberately indifferent to his serious medical needs by denying him adequate medical care, interfering with prescribed care, refusing to provide him with a sitz bath in his cell, and prompt access to showers as needed.  The defendants dispute Howell's claims.

Pointing to Howell's extensive medical records, including a treatment "flow sheet" for sitz baths that he has received, the defendants deny that they have been deliberately indifferent to a serious medical condition.  The records reflect that Howell was allowed to use a sitz bath in his cell until August of 2003.  After this time, Howell was instructed to use a sitz bath in the medical department, where one was available to him on a daily basis.  (Doc. # 50, Appendix at 2-13).  He also received hemorrhoid ointment and pain medication when requested.  (*Id.* at 2-21).  The record reflects further that his many sick call requests, requesting additional items such as a "donut" for comfort while sitting and gauze in case of rectal bleeding, were honored immediately by medical personnel. (*Id.* at 36-63).  Howell was examined by a surgeon again in March of 2006.  (*Id.* at 17-18, 31-32).  Once again, the examining physician determined that surgery was not necessary and he prescribed self-care in the form of sitz baths and stool softeners.  *Id.* at 18.

13

Dr. Natascha Dumas, who treated Howell at the Ramsey I Unit, explains in her affidavit that Howell had access to in-cell sitz baths until August of 2003, when buckets or pans were ordered removed from all offenders' cells. (Doc. # 50, Appendix at 66). At that time, Howell was given a pass to receive sitz baths in the medical department 2-3 times per day. (*Id.*). Dr. Dumas reports that Howell requested an in-cell sitz bath during a visit to the medical department on February 26, 2004, in order to prevent embarrassment about cleaning his hemorrhoids. (*Id.*). Dr. Dumas found no indication for an in-cell sitz bath when the same treatment could be provided in the medical department. (*Id.*). She extended Howell's pass to allow for sitz baths in the medical department and she also issued a shower pass to allow him to shower if he became soiled. (*Id.*). In addition, Dr. Dumas prescribed warm compresses as needed to relieve any pain or discomfort. (*Id.*). Dr. Dumas reports that she has evaluated Howell several times in 2005, 2006, and 2007. (*Id.* at 66-67). Each time she determined that it was not medically necessary for Howell to have a sitz bath in his cell and she approved a pass to allow these treatments 2-3 times per day in the medical department. (*Id.* at 67). According to Dr. Dumas, Howell's requests for in-cell sitz baths were based on "convenience instead of medical need." (*Id.*). Thus, Dr. Dumas denies Howell's claim that she was deliberately indifferent to his needs.

The defendants dispute that Howell was made to wait, or that treatment was delayed, in deliberate indifference to a serious condition. According to Registered Nurse Stephen Rogers, "[a] sitz bath is not 'urgent' in nature." (Doc. # 50, Appendix at 65). Because it is not an urgent form of treatment, it is "acceptable to have the patient wait until [his scheduled

14

appointment] or more urgent needs of other patients are met." (*Id.*).  Based on his review of

Howell's records, and his thirty years of experience as a registered nurse, Rogers notes that

there was never any indication that Howell's condition posed a serious threat to his health

or that he was in serious risk of danger at any time.  (*Id.*).  In that respect, there is no record

showing that Howell ever developed anemia or ill health as a result of his condition and there

is no indication that he ever suffered a serious infection.  (*Id.*).  In Rogers's view, there was

"no denial or delay of care that would present a risk of harm evident in this patient's medical

record." (*Id.*).

Rogers's assessment is shared by Dr. Charles Adams, who reviewed Howell's medical

records and concludes that there is no evidence that Howell sustained any substantial injury

or harm.  (Doc. # 50, Appendix at 68).  Dr. Adams states further that, in his professional

opinion, the care provided was "more than fair and reasonable in a patient that had a difficult

and unpleasant medical problem." (*Id.*).

To the extent that Howell seeks monetary damages for embarrassment or humiliation

as a result of his condition, his claims fail as a matter of law because the PLRA, 42 U.S.C.

§ 1997e(e), precludes recovery of these types of damages.[6]  In that regard, the Fifth Circuit

has recognized that § 1997e(e) bars compensatory damages for allegations of "mental

---

[6]      42 U.S.C. § 1997e(e) provides as follows: "No federal civil action may be brought by a
prisoner confined to a jail, prison, or other correctional facility, for mental or emotional
injury suffered while in custody without a prior showing of physical injury."

anguish, emotional distress, psychological harm," and the like.  *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).

Further, to the extent that Howell disagrees with the level of care that he received, the Fifth Circuit has held repeatedly that mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs under the Eighth Amendment.  *See Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977).  Even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation.  *See Harris v. Hegman*, 198 F.3d 153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).

Howell does not allege or show that he was refused care or that the defendants intentionally treated him incorrectly with wanton disregard for his medical condition.  *See Domino,* 239 F.3d at 756.  His allegations concerning the level of care that he received are not sufficient to establish that he was treated with deliberate indifference and do not state a violation of the Eighth Amendment.   Accordingly, Howell fails to establish a constitutional violation of the Eighth Amendment involving his medical care.

### 2. Eighth Amendment - Psychological Care

Howell complains further that the following defendants were deliberately indifferent to his "expressed suicidal ideations" on June 1, 2005: Officer Stacy Hecht, Counselor Billy Stone, Lieutenant Mickens, Captain Kitchens, and Officer Patricia Weaver.   These

defendants, who have filed a separate motion for summary judgment to address this claim, deny that they were deliberately indifferent to Howell's psychological needs. (Doc. # 51).

The defendants explain that Howell's allegations about the June 1, 2005 incident are related to disciplinary charges that were filed against him on May 25, 2005. On that occasion, Howell was caught smoking what appeared to be marijuana in the gym area of the Ramsey I Unit. (Doc. # 51, Appendix at 2-5). Howell's urine was tested for drugs by the Drug Testing Coordinator, Officer Stacy Hecht. (*Id.*). Two separate tests came back positive for THC and Howell admitted smoking marijuana. (*Id.*). As a result, Howell was charged with a major offense and placed in prehearing detention or administrative segregation. (*Id.* at 7).

While in segregated confinement on May 27, 2005, Howell was notified of the charges against him, the possible penalties that he faced, and the date and time of his imminent disciplinary hearing. (*Id.* at 7-9). Officer Patricia Weaver was appointed to act as Howell's counsel substitute. (*Id.*). The records from Howell's disciplinary case indicate that he intended to present as a defense the fact that he suffered from severe hemorrhoids, that he was in pain and depressed because of his medical condition, and that he was smoking marijuana "for pain management and as an anti-depressant." (*Id.* at 10). After considering Howell's defense at the disciplinary hearing on June 1, 2005, the presiding disciplinary official (Captain Kitchens) found Howell guilty as charged of violating prison rules. (Doc. # 51, Appendix at 11). As punishment, the disciplinary official suspended Howell's recreation and commissary privileges for 45 days and placed him in solitary confinement or

administrative segregation for a total of 15 days.  (*Id.*).  The disciplinary official also reduced Howell's classification status from S3 to L3 and forfeited 365 days of previously earned credit for good-conduct (*i.e.*, "good-time credit").  (*Id.*).

The record reflects that, prior to his placement in administrative segregation, Howell was given a physical and mental evaluation.  Howell was seen in the clinic on May 30, 2005, where he complained about his hemorrhoids and asked for a medical transfer to the Stiles Unit.  (Doc. # 51, Appendix at 21).  At that time, Howell threatened that he would cut his wrist if he was not transferred to another unit soon.  (*Id.*).  The following day, on May 31, 2005, Howell was evaluated by a licensed mental health care worker, Counselor Billy Stone.  (*Id.* at 14-16).  During his evaluation with Counselor Stone, Howell explained that he suffered from chronic hemorrhoids and that he was "angry" because he could not have a sitz bath in his cell.  (*Id.* at 16).  However, Howell denied having suicidal ideations, hallucinations, or delusions.  (*Id.*).  Counselor Stone believed that there was evidence of depression, but noted that Howell would have continued monitoring while in administrative segregation and scheduled an additional mental health examination upon Howell's release from segregated confinement.  (*Id.*).  On June 1, 2005, Howell cut his wrist in two places. As a result, Howell was transferred immediately to the Jester IV Unit psychiatric facility for "crisis management."

The defendants deny that there was deliberate indifference to an expressed suicidal ideation.  In support, they provide an affidavit from Dr. Charles Middleton.  (Doc. # 51, Appendix at 33-35).  Dr. Middleton notes that there is no evidence in Howell's medical

records or the record of the psychological evaluation with Counselor Stone on May 31, 2005, showing that Howell expressed suicidal thoughts in connection with his placement in administrative segregation. (*Id.* at 34). Because the record does not contain evidence of an "actual suicide complaint" prior to the June 1, 2005 incident, Dr. Middleton concludes that Counselor Stone was not deliberately indifferent to Howell's psychological state. (*Id.*).

The record, which shows that Howell denied having suicidal thoughts when he was examined by Counselor Stone on May 31, 2005, supports Dr. Middleton's conclusion. Howell does not allege or show that he expressed an actual suicidal complaint to Stone or any other defendant prior to June 1, 2005. Rather, the pleadings and the grievance that Howell filed regarding his disciplinary punishment and placement in administrative segregation assert that the defendants were negligent in disregarding his psychological state because his "physical and mental distress should have been obvious to any casual observer." (Doc. # 51, Appendix at 21-22). Thus, Howell claims that the defendants "should have known" that he was suicidal. This allegation establishes, at most, negligence. It is well established that allegations of negligence or medical malpractice "do not constitute deliberate indifference," *Gobert*, 463 F.3d at 347 (citations omitted), and will not suffice to demonstrate an Eighth Amendment claim. *See Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *see also Stewart*, 174 F.3d at 534 ("[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not.").

Howell does not show that he was refused appropriate care or that the defendants intentionally ignored a threat of harm with wanton disregard for Howell's psychological condition. *See Domino,* 239 F.3d at 756. Howell's allegations of negligence are not sufficient to establish that any of the defendants knew that he was suicidal, but ignored a serious psychological condition with deliberate indifference. Howell does not otherwise raise a genuine issue of material fact on whether the defendants violated his Eighth Amendment rights in connection with the level of psychological care that he received on or about June 1, 2005. Accordingly, he does not demonstrate a constitutional violation of the Eighth Amendment with respect to this claim.

### 3.    Retaliation

Howell alleges that, after he complained about his medical care, he was transferred on June 6, 2005, from a cell that had afforded some privacy for his medical condition, to a cell that failed to afford sufficient privacy. Howell adds that his cell was searched on February 28, 2006, five days after he filed his complaint in this case, and that, subsequently, his name was removed from the "Craft Card Waiting List." Howell complains that these actions were the result of retaliation by Assistant Warden Turrubiarte and Officer Powell. (Doc. # 16, ¶ 48). The defendants insist that Howell fails to state a valid claim for retaliation.

It is well established that a prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct. *See Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995)). A prisoner's personal belief that retaliation must have been the reason for the adverse action

is insufficient to state a valid claim under 42 U.S.C. § 1983. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "Causation requires a showing that but for the retaliatory motive the complained of incident . . . would not have occurred." *Id*. (internal quotation marks and citations omitted).

Howell's primary claim is that Assistant Warden Turrubiarte retaliated against him by transferring him to a cell that afforded less privacy for his medical condition. The defendants argue that Howell fails to allege a sufficient adverse act.[7] To establish a constitutional violation, an inmate's retaliation claim must allege adverse acts that "would chill or silence a person of ordinary firmness from future First Amendment activities." *Morris v. Powell*, 449 F.3d 682, 685-86 (5th Cir. 2006) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc), *vacated on other grounds*, 523 U.S. 574 (1998)). This standard recognizes that "some acts, though perhaps motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Id*. at 686. Such *de minimis* acts "do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id*.

---

[7]    In addition, Turrubiarte has furnished an affidavit, denying any retaliation against Howell and further explaining that he had no authority to transfer inmates or to make cell assignments at the time in question. (Doc. # 50, Appendix at 70-71). Turrubiarte denies having any motive or intent to retaliate and he contends further that he had no personal involvement in the alleged cell transfer. (*Id.*).

The cell transfer that Howell complains of does not meet the more-than-*de miminis* standard.  Although Howell asserts that he was intentionally transferred to a less desirable cell, he does not allege or show that he was transferred to a more dangerous portion of the prison or that the transfer exposed him to an increased risk of harm.  The Fifth Circuit has recognized that this type of housing transfer is considered *de minimis* and is not a sufficiently adverse retaliatory act to support a § 1983 claim.  *See Morris*, 449 F.3d at 687-68.  Howell's allegation about his reported removal from the Craft Card Waiting List likewise fail to show the requisite level of harm.[8]

Howell complains further that his cell was searched by Officer Powell on February 28, 2006, in retaliation for this lawsuit.  Howell has failed to present direct evidence of retaliatory motivation and he does not allege a chronology of events from which retaliatory motivation for the cell search could be plausibly inferred, as required to state a claim for retaliation.  In that respect, the record reflects that Howell filed his complaint on February 23, 2006, but that this Court did not authorize service of process on any of the defendants until November 7, 2007.  (Doc. # 26).  Howell does not otherwise allege facts showing that Officer Powell had notice of his complaint prior to the search of his cell.  Under these circumstances, Howell's conclusory allegation that Officer Powell conducted the search for retaliatory reasons is not sufficient to withstand a proper motion for summary judgment.  *See*

---

[8]    Likewise, the defendants note that Howell was transferred to a different cell on June 6, 2005, shortly after his disciplinary conviction on June 1, 2005, for smoking marijuana.  Howell does not show that, but for a retaliatory motive, the change in cell assignment would not have occurred.  Therefore, Howell also fails to establish the element of causation that is required to make a valid retaliation claim.  *See McDonald*, 132 F.3d at 231.

*Woods*, 60 F.3d at 1166; *see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (explaining that a prisoner must allege more than mere subjective beliefs that a defendant retaliated against him).  Therefore, Howell does not raise a genuine issue of fact showing that Officer Powell had the requisite retaliatory motive.

In addition, Howell does not allege facts showing that the alleged cell search resulted in a retaliatory adverse act that was more-than-*de minimis*.  As noted above, to prevail on a retaliation claim Howell must demonstrate that he suffered an adverse act that "would chill or silence a person of ordinary firmness" from complaining in the future.  *Morris*, 449 F.3d at 685-86.  Judging from this record, which contains numerous grievances filed by Howell after the search was conducted in February of 2006, the search itself had no chilling effect on Howell's propensity to complain.  (Doc. # 16, Exhibits; Doc. # 57, Exhibits).

Likewise, Howell does not specify how the items taken from his cell relate to his complaint in this case and he does not otherwise show that he suffered substantial harm as a result.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999) (emphasizing that only "egregious retaliatory acts are allowed to proceed past summary judgment").  To the extent that Howell claims that items were taken from his cell that were "pertinent" to his complaint, he does not provide specific facts showing that he has been denied the ability to present relevant evidence in support of his claims or that Officer Powell violated his right of access to the courts.  (Doc. # 16, ¶ 48).[9]  A prisoner's right to access the courts is "ancillary

---

[9]     Howell's amended complaint does not indicate what was taken from his cell during the
(continued...)

to the underlying claim, without which a plaintiff cannot have suffered injury by being shut

out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).  Because Howell does not

raise a genuine issue of material fact showing that he was denied the right to present a valid

claim, he does not demonstrate an actual injury.  *See Jones v. Greninger*, 188 F.3d 322, 325

(5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522

U.S. 995 (1997)).  It follows that Howell further fails to demonstrate a valid retaliation claim

against Officer Powell or to show that she violated his constitutional rights.

### 4.    Objective Reasonableness

Because Howell has failed to establish a constitutional violation, the Court need not

proceed to the final step of the qualified immunity analysis.  *See Hathaway v. Bazany*, 507

F.3d 312, 320 (5th Cir. 2007).  Nevertheless, the defendants argue that, even if a violation

occurred, they are entitled to qualified immunity from suit because they acted in good faith

and their conduct was objectively reasonable under the circumstances.  To avoid summary

judgment on the defendants' qualified immunity defense, a plaintiff must present evidence

to raise a fact issue "material to the resolution of the questions whether the defendants acted

---

[9](...continued)
      search that reportedly occurred on February 23, 2006.  (Doc. # 16, ¶ 48).  In response to the
      summary judgment motion, Howell states that the following items were taken:  several 37
      cent stamps; a "motion prepared for court" with three 37 cent stamps; approximately 150
      sheets of typing paper; two multi-strike typewriter ribbons; several grievances and notes
      pertaining to this suit; half a bag of potato chips; and one can of orange juice.  (Doc. # 57,
      at 18).  Howell does not provide specific facts showing how the motion, the grievances, the
      notes or any of the other items that were allegedly taken prevented him from presenting a
      valid claim.  His conclusory allegations are not sufficient to show that he was denied access
      to courts or to make an actionable claim of retaliation.  *See Moody v. Baker*, 857 F.2d 256,
      257-58 (5th Cir. 1988).

in an objectively reasonable manner in view of the existing law *and facts available to them*."

*Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993) (emphasis added).   If

reasonable public officials could differ as to whether the defendant's actions were lawful, the

defendant is entitled to immunity. *See Malley*, 475 U.S. at 341.   "Even if a defendant's

conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to

qualified immunity if the conduct was objectively reasonable."   *Zarnow v. City of Wichita*

*Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d

1178, 1183 (5th Cir. 1990)).

Where qualified immunity is asserted, Howell, as the plaintiff, has the burden to

produce admissible evidence that raises a genuine issue of material fact on whether the

defendants' actions were objectively unreasonable under the circumstances in view of

existing law and the facts known to them.   *See Michalik*, 422 F.3d at 262.   Howell has filed

a response to the summary judgment motion, but his pleadings do not overcome the

defendants' assertion of qualified immunity.   As outlined above, there is no evidence that he

was denied care in violation of the Eighth Amendment or that the defendants were

deliberately indifferent to his medical or psychological needs.   Likewise, Howell has failed

to demonstrate a valid claim of retaliation or to show that he was intentionally mistreated.

Howell's unsupported allegations do not raise a genuine issue of material fact on whether the

defendants' actions were unreasonable under the circumstances and they are not sufficient

to overcome the defendants' assertion of qualified immunity in this instance.   The Court

concludes, therefore, that summary judgment on the defendants' assertion of qualified immunity is warranted.

## IV.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.     The defendants' motions for summary judgment (Docs. # 50, # 51) are

**GRANTED**.

2.     All other pending motions, including the plaintiff's motion for rehearing on the

Court's order denying him leave to amend the complaint further (Doc. # 48),

are **DENIED**.

3.      The complaint in this case is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED on October 24, 2008.

Nancy F. Atlas
United States District Judge